

1

2

3

4

5

ORIGINAL

6

7

8                                                    The Honorable Robert J  Bryan

9                              UNITED STATES DISTRICT COURT
                         FOR THE WESTERN DISTRICT OF WASHINGTON
10                                        AT TACOMA

11   JOHN S  TEMPLE,                         NO  C01-5124 RJB

12            Plaintiff,                     **DEFENDANT'S OPPOSITION**
                                             **TO PLAINTIFF'S MOTION FOR**
13         v                                 **PARTIAL SUMMARY**
                                             **JUDGMENT**
14   ALLSTATE INSURANCE COMPANY, a
     foreign corporation,
15
              Defendant
16

17

18

19

20

21

22

23       

24

25   CV 01-05124 #0000079

26

DEFENDANT'S OPPOSITION TO PARTIAL                    Ruddell Williams P S
SUMMARY JUDGMENT - Case No  C01-5124RJB       1001 FOURTH AVENUE PLAZA
291/322477 02                                          SUITE 4500
090902/1346/42496 00103                       SEATTLE, WA  98154-1065
                                                    (206) 624-3600



# TABLE OF CONTENTS

**Page**

I STATEMENT OF FACTS . 1

II SOME OF THE EVIDENCE SUBMITTED BY TEMPLE IS INADMISSIBLE
AND SHOULD BE STRICKEN FROM THE RECORD . .... 1

III ALLSTATE, NOT PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S RETALIATION CLAIMS . 1

    A    Plaintiff Did Not Engage in Protected Activity . . . . 2

    B    Allstate's Conditional Offer of Enhanced Post-Termination
        Benefits Was Not An Adverse Employment Action . 5

    C    Temple Cannot Establish Retaliation Because He Has No
        Evidence of Any Causal Link Between Any Protected Activity
        and Allstate's Alleged Adverse Action . . . 9

IV ALLSTATE, NOT PLAINTIFF, IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S DISPARATE IMPACT CLAIM 12

    A    Plaintiff's Disparate Impact Claim Is Conclusively Rebutted By
        Allstate's Undisputed Statistical Evidence 12

    B    Plaintiff has No Legal Support for his Novel Disparate Impact
        Theory . . 14

V ALLSTATE, NOT PLAINTIFF, IS ENTITLED TO SUMMARY JUDGMENT
ON HIS DISABILITY CLAIM . . . . 15

    A    Temple was Not a "Qualified Individual with a Disability"
        Because he Could Not Meet the Agency Standards . 16

    B    Temple's Condition Did Not Qualify For Protection Under
        Disability Laws During the Vast Majority of his Employment with
        Allstate . 18

        1    Temple Was Not Disabled From November 1998 to April
            1999 . . ... . . 19

        2    Temple Was Not a Qualified Individual With a Disability
            After January 2000 . . . . 20

        3    Whether Temple Was Disabled From May 1999 to
            December 1999 is, at Best, Disputed . 21

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB    -i-

**TABLE OF CONTENTS**
**(continued)**

Page

a    Whether Temple Was Disabled Under the WLAD
During the Second Time Period is, at best,
Disputed                                                  21

b    Whether Temple Was Disabled Under the ADA
During the Second Time Period is, at Best,
Disputed                                                  25

C    Temple Did Not Give Allstate Adequate Notice of His Alleged
Need for Accommodation                                    26

D    Allstate Responded to Temple's Request for Accommodation
Appropriately. . . . . . . . . ..... .. . . . . . .. ... . . . .. ...... . 29

1    There is Ample Evidence That Allstate Engaged in the
Interactive Process With Temple                          . 29

2    Allstate Provided One of the Accommodations
Requested by Plaintiff And Was Not Required to Provide
the Other                                                 31

3    Allstate Handled Temple's Later Requests for
Accommodation Properly                                    35

VI CONCLUSION                                                  3

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") relies on a strained and distorted account of both the facts and the law   A complete and accurate reading of the record and the cases confirms that the Allstate programs and standards under attack in this lawsuit were designed for legitimate business purposes and implemented in a lawful manner   For that reason, and those set forth in Allstate's Motion for Summary Judgment, Allstate is entitled to summary judgment on all of Plaintiff's claims, and Plaintiff's Motion should be denied

## I. <u>STATEMENT OF FACTS</u>

Allstate refers the Court to its Motion for Summary Judgment for a description of the relevant (and undisputed) facts

## II. <u>SOME OF THE EVIDENCE SUBMITTED BY TEMPLE IS INADMISSIBLE AND SHOULD BE STRICKEN FROM THE RECORD.</u>

Temple submits a number of declarations that should be stricken from the record because the witnesses were not properly disclosed to Allstate   See Allstate's Motion in Limine to Exclude Testimony by Late-Disclosed Witnesses [1]

## III. <u>ALLSTATE, NOT PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS.</u>

Plaintiff's claim that Allstate's Preparing for the Future Program ("Program") was part of a "war" designed to eliminate "troublemakers" like Temple is full of rhetoric, but devoid of factual or legal support   The Court must deny Plaintiff's Motion and grant summary judgment in favor of Allstate because Plaintiff cannot establish a prima facie case of retaliation under state and federal law and, even if he could, he has no evidence to refute Allstate's legitimate business purpose for the Program

---

[1] The declarations in this category are those from   Richard Cook, Mark Monroe, Greg Morgenson, Preston Partain, Edward Spencer, Jim Spadafore, Donald Trgovich, and Manual Zuniga

DEFENDANT'S OPPOSITION TO PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB – Page 1
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1        To establish a prima facie case of retaliation under applicable state and
2    federal law, the Plaintiff must show that (1) he was engaged in a protected activity,
3    (2) his employer subjected him to adverse employment action, and (3) there is a
4    causal link between the protected activity and the employer's action  See, e g ,
5    Villiarmo v  Aloha Island Air, Inc , 281 F 3d 1054, 1064 (9th Cir  2002), Weeks v
6    Harden Mfg  Corp , 291 F 3d 1307, 1311 (11th Cir  2002), Francom v  Costco
7    Wholesale Corp , 98 Wn  App  845, 862, 991 P 2d 1182 (2000)

8        Plaintiff's prima facie case is based on three fundamentally flawed
9    propositions of law  First, Plaintiff erroneously suggests that his refusal to sign a
10   release of claims ("Release") in exchange for receiving certain post-termination
11   consideration constituted "protected activity "  Second, Plaintiff erroneously argues
12   that Allstate subjected him to adverse employment action by conditioning its offer to
13   become an independent contractor agent on his signing the Release  Third, Plaintiff
14   conveniently, but incorrectly, contends that he does not need to prove a causal link
15   between his protected activity and Allstate's actions  None of these legal
16   propositions is supported by law or the facts of this case, which Plaintiff repeatedly
17   distorts and misreads

18   **A.    Plaintiff Did Not Engage in Protected Activity.**

19       Plaintiff's prima facie case rests on the incorrect assumption that he engaged
20   in "protected activity" when he declined to sign the Release  Although Plaintiff cites
21   numerous cases in support of this assertion, not one of them actually concludes that
22   an employee engages in protected activity by declining to sign a waiver, and no
23   court has ever reached that conclusion

24       Because there is no direct judicial support for his novel legal theory, Plaintiff
25   awkwardly turns to the National Labor Relations Act  As a threshold matter,
26   Plaintiff's reliance on the NLRA to interpret the ADA is dubious and contrary to Ninth

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 2
291/322477 02
090902/1346/42496 00103

Ruddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1  Circuit precedent  Plaintiff cites a Third Circuit decision, <u>Fogelman v Mercy</u>
2  <u>Hospital, Inc</u>, as support for his theory, but he fails to disclose (except in footnote
3  15) that the Ninth Circuit and most other circuits have expressly adopted a different
4  framework (Title VII) for analyzing ADA retaliation claims  <u>Barnett v. U S Air, Inc</u>,
5  228 F 3d 1105, 1121 (9th Cir 2000) <u>overruled on other grounds</u> by <u>U S Airways,</u>
6  <u>Inc v Barnett</u>, 122 S Ct 1516, 1520 (2002)  Consequently, in the Ninth Circuit, as
7  in most other circuits, Title VII, not the NLRA, provides the relevant framework for
8  evaluating ADA retaliation claims  <u>Id</u>

9       Even if the NLRA were a relevant guide to interpreting Plaintiff's ADA
10  retaliation claim, the labor relations decisions cited by Plaintiff are inapposite, as
11  none involve any discussion of a waiver  <u>See A&D Davenport Transp, Inc</u>, 256
12  NLRB 462, 464-65 (1981), <u>Prince Trucking Co</u>, 283 NLRB 806, 807-08 (1987)  In
13  these cases, the NLRB did not consider whether declining to sign a waiver
14  constituted protected activity under the NLRA [2]

15       Plaintiff does cite a lone labor relations decision involving a waiver of sorts,
16  however, Plaintiff misreads the court's ruling in that case  In <u>Retlaw Broadcasting</u>
17  <u>Co v NLRB</u>, 53 F 3d 1002 (9th Cir 1995), the court considered the case of a union
18  employee who was asked to sign an agreement in which he waived his right to
19  grieve any <u>future</u> termination of his employment  <u>Id</u> at 1006  Because he was
20  being asked to waive the right to challenge <u>future</u> actions by his employer, the
21  NLRB and the court ruled that by declining to sign the agreement, the employee
22  was engaging in the protected activity of asserting his rights under the collective
23  bargaining agreement  <u>Id</u> at 1006-07.

24  _____
25  [2] In <u>Davenport</u>, the NLRB did review a document that was designed to eliminate the
    employer's liability, however, that document cannot properly be characterized as a waiver
    The employer in <u>Davenport</u> required the employees to make false admissions of fact, and it
26  intentionally withheld information as to the potential consequences of signing the document
    <u>Davenport</u>, 256 NLRB at 463

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB - Page 3
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

1    Unlike the purported settlement in <u>Retlaw</u>, Allstate's Release did not include

2    a waiver of future claims   (<u>See</u> Plaintiff's Exhibit ("P Ex ") 3 )  Nothing in <u>Retlaw</u>

3    suggests that Temple engaged in protected activity by declining to sign a release of

4    <u>existing</u> claims in exchange for substantial post-termination benefits  To the

5    contrary, the Court's discussion in <u>Retlaw</u> establishes that an offer to settle an

6    existing dispute in exchange for valid consideration is permissible under the NLRA

7    Lacking any case law support, Temple asserts that "logic" requires a finding

8    that an employee's refusal to waive a claim is protected activity  Far from being

9    logical, this argument flies in the face of common sense and well-established case

10   law recognizing the value and utility of properly drafted releases  If Temple's

11   argument were to prevail, any employer who sought a release in exchange for an

12   offer of severance or in settlement of a disputed discrimination claim would risk

13   being accused of retaliation  Such a result would thwart rather than advance public

14   policy

15   Federal courts, including the Ninth Circuit, repeatedly have acknowledged

16   that an employer's offer or exchange of consideration for an employee's release of

17   employment discrimination claims is both commonplace and consistent with public

18   policy  <u>See</u> <u>e g</u>, <u>Blackwell v  Cole Taylor Bank</u>, 152 F.3d 666, 669 (7th Cir  1998),

19   <u>Stroman v  West Coast Grocery Co</u>, 884 F 2d 458, 460-61 (9th Cir  1989),

20   Allstate's Motion for Summary Judgment at 12-13

21   Plaintiff ignores this precedent and misrepresents applicable law in arguing

22   that Allstate's use of a waiver is a form of "illegal coercion"   For example, Plaintiff

23   cites <u>Callen v  Pennsylvania R  Co</u>, 332 U S  625, 630-31 (1948), for the

24   proposition that Allstate's waiver was "simply a device used to exempt the company

25   from liability out of the forced conversion "  That very argument was made in <u>Callen</u>

26   and <u>expressly rejected</u> by the Court

Ruddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1
2

> It is obvious that a release is not a device to exempt
> from liability but is a means of compromising a claimed
> liability and to that extent recognizing its possibility

3  Callen, 332 U S at 630-31  So in the only decision cited by Plaintiff in which a court

4  actually considered whether it was proper for an employer to use a waiver, the U S

5  Supreme Court ruled that it was "obvious" that the employer's use of a release of

6  claims was proper

7  While Temple would like to have his cake and eat it too by taking the benefits

8  Allstate offered while also retaining his right to sue, he has failed to cite any case

9  that supports his claim that Allstate acted unlawfully in requiring him to make a

10  choice, or that the economic choice he made was protected activity    For the

11  foregoing reasons, Temple has not shown that he engaged in "protected activity"

12  and thus has not established the first element of his prima facie claim of retaliation

13  For this reason alone, his motion for partial summary judgment should be denied,

14  and judgment entered for Allstate

15
16

**B.    Allstate's Conditional Offer of Enhanced Post-Termination Benefits
Was Not An Adverse Employment Action.**

17  Plaintiff's retaliation claim also fails because he cannot establish the second

18  element of a prima facie case    that Allstate subjected him to an "adverse

19  employment action" because he engaged in protected activity   Plaintiff argues that

20  Allstate's offer to become an independent contractor agent was simply a form of

21  continued employment, and that conditioning "continued employment" on a waiver

22  is a form of adverse action. Temple's factual and legal conclusions are wrong

23  Plaintiff's argument misleadingly argues that he and other agents had a right

24  to "continue to work" with Allstate    Plaintiff had no legal right to continue with the

25  company as an exclusive agent independent contractor   The contracts of Plaintiff

26  and the other agents were terminable at will by either party   (See P Ex 5 at § 11 )

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB - Page 5
291/322477 02
090902/1346/42496 00103

It is undisputed that Allstate terminated the employment of all of its employee agents (as it was entitled to do under the employment agreement) and offered each of them four post-termination options under the Program [3]  Three of the four options resulted in the agent's severing all ties to the company (either of the severance pay options or the option under which the agent converted and sold the book of business)  The fourth option, which is the only one acknowledged in Temple's Motion, allowed agents who signed the Release to receive a bonus, forgiveness of debt, and to become independent contractor agents under a new contract, which differed significantly from the contracts they had as employees  (Declaration of Barry Hutton in Opposition to Plaintiff's Motion for Summary Judgment ("Second Hutton Decl ") at ¶ 5 )[4]  Agents who elected this option not only entered into a new independent contractor relationship, but received a one-time bonus, forgiveness of debt, and an opportunity to gain an economic interest in their book of business that they did not have as employees  Id  While Allstate had agreed to allow employee agents to convert to independent contractors previously, they did not previously receive a bonus, forgiveness of debt upon conversion, or the same rights to gain an economic interest  Id  In addition, Temple has no evidence that employee agents previously had a right to convert  Temple offers the declaration of Barry Koehler as

---

[3] The Isbell declaration that Temple relies on does not support his claim  Allstate terminated the employment of all agents, whether or not they signed a waiver  (Declaration of Barry Hutton in Support of Allstate's Motion for Summary Judgment ("Hutton Decl ") at ¶ 16 and Ex  B )  The letter Isbell cites from her manager does not prove otherwise, and in any event, it undisputedly did not go to Temple, who worked in a different market and did not receive any information except the written materials referenced in Hutton's declaration (Temple Dep  470 10-12, 471 3-15, 480 3-8 and 18-24 )[3]  Because Plaintiff submitted copies of the entire transcripts of every deposition to which they cite, Allstate will not re-submit copies of the depositions cited in this Opposition  Deposition exhibits are attached to the Declaration of Karen Jones in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Second Jones Decl ")

[4] Among other things, the R3001 Independent Contractor Agreement gave agents broader flexibility and control over how to run their businesses, hire their staffs, and spend their money  It also gave them a valuable economic interest in their book of business

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 6
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1   the sole support for his claim that this offer was nothing more than continued

2   employment  However, Koehler's declaration neglects to mention that in addition to

3   signing an entirely new contract, when he converted he received a cash bonus,

4   forgiveness of certain debts, and the right to gain an economic interest in his book

5   of business  (See P Ex 1 at ALL 000469, 000482.) Therefore, the record clearly

6   shows that Allstate's conditional offer was not for continued employment, but for

7   significant benefits and a new contractual relationship, to which the terminated

8   employee agents were not otherwise entitled

9        Courts in analogous cases have rejected Plaintiff's argument that

10  conditioning an offer of a new or different position on a waiver constitutes adverse

11  action  In <u>Graves v Fleetguard, Inc</u>, 1999 WL 993963 at *4-5 (6th Cir 1999), the

12  court affirmed summary judgment in favor of an employer who laid off an employee

13  as part of a reduction-in-force and then offered him a new position on the condition

14  that he drop his pending discrimination charges  Rejecting the employee's

15  argument that the conditional offer of employment was an adverse action, the court

16  reasoned that the employer was under no obligation to transfer or rehire  Thus, it

17  deemed the conditional proposal of employment to be a legitimate settlement offer

18  designed to benefit both parties, not an adverse action  See also <u>Hansen v</u>

19  <u>Vanderbilt Univ</u>, 961 F Supp 1149, 1153 (M D Tenn 1997) (dismissing retaliation

20  claim on summary judgment and holding that requiring an employee to choose

21  between pursuing an EEOC claim and a settlement payment was not "adverse

22  action"), <u>Longworth v National Supermarkets, Inc</u>, 1986 WL 8711 (E D Mo 1986)

23  (dismissing plaintiff's retaliation claim and holding that employer's refusal to

24  reinstate her unless she withdrew grievance and EEO charge was not retaliation),

25  <u>Penny v Winthrop-University Hosp</u>, 883 F Supp 839 (E D N Y 1995) (holding that

26  offer to reinstate terminated employee in exchange for her agreement to, among

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB - Page 7
291/322477 02
090902/1346/42496 00103

Ruddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1  other things, waive and release claims was <u>not</u> an adverse employment action)

2  Temple's sole support for his argument that he experienced adverse

3  employment action is <u>Hishon v King & Spalding</u>, 467 U S 69 (1984) (Plaintiff's

4  Motion at 22 ) In <u>Hishon</u>, a law firm allegedly engaged in unlawful discrimination by

5  withholding consideration for partnership on the basis of gender  The employer

6  argued that the denial of partnership was not an adverse employment action  The

7  Court disagreed, concluding that becoming a partner was the expected career path

8  for an associate  "the opportunity to become partner was part and parcel of an

9  associate's status as an employee at respondent's firm "  <u>Id</u> at 76

10  This case is different from <u>Hishon</u> because becoming an independent

11  contractor agent was not part of a natural progression or expected career path for

12  employee agents  Neither of the critical factors that the <u>Hishon</u> court relied on is

13  present here  First, in determining that consideration for partnership was a term or

14  condition of employment, <u>Hishon</u> relied on the fact that the firm "explicitly used the

15  prospect of ultimate partnership to induce young lawyers to join the firm "  <u>Id</u>  In

16  contrast, Allstate did not use the opportunity to become an independent contractor

17  Exclusive Agent to induce Temple to become an employee agent, at the time

18  Allstate hired Temple, the independent contractor program did not exist  (Hutton

19  Decl at ¶ 11, Deposition of John S Temple ("Temple Dep ") at 31 5-32 13 )

20  Moreover, according to Temple, becoming an independent contract agent likely

21  would not have been an inducement, as he claims that few employee agents even

22  wanted to become Exclusive Agents  (Plaintiff's Motion at 29 )

23  Second, the <u>Hishon</u> decision emphasized that lawyers outside of the firm

24  were not routinely considered for partnership, employment as an associate was

25  almost the exclusive means of becoming a partner at the firm  <u>Id</u>  Allstate, in

26  contrast, routinely recruited Exclusive Agents from outside the employee agent

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB - Page 8
291/322477 02
090902/1346/42496 00103

Ruddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

1   workforce   (Second Hutton Decl at ¶6 )  In contrast to <u>Hishon</u>, at the time the

2   Program was introduced, many Independent Contractor agents had started with

3   Allstate under that contract, rather than as employee agents like Temple  (Second

4   Hutton Decl at ¶ 6 )

5       Unlike the offer of partnership in <u>Hishon</u>, the offer to become an independent

6   contractor was neither an inducement to become an agent, nor an expected or

7   customary career progression for employee agents like Temple   As a result,

8   Allstate's decision to condition this separate business relationship on the plaintiff's

9   waiver of claims was not an "adverse employment action "  The failure of an

10  employer to provide consideration to an individual who does not execute a release

11  does not constitute an adverse action   Otherwise, an adverse action would arise in

12  every case where an employee declines an offer of settlement because the

13  employee does not want to execute a release

14  **C.    Temple Cannot Establish Retaliation Because He Has No Evidence of**
15  **Any Causal Link Between Any Protected Activity and Allstate's Alleged**
    **Adverse Action.**

16      Plaintiff mistakenly cites <u>EEOC v  Board of Governors</u>, 957 F 2d 424 (7th Cir

17  1992) as support for the proposition that he does not have to prove that Allstate

18  implemented Preparing for the Future for retaliatory reasons   Plaintiff's reliance on

19  <u>Board of Governors</u> is misplaced for two reasons

20      First, the court in <u>Board of Governors</u> considered an employer's response to

21  an employee who had engaged in actual protected activity   However, as described

22  above, Temple has no support in law or fact for his claim that he engaged in

23  protected activity by not signing the Release

24      Second, <u>Board of Governors</u> is distinguishable because the policy in

25  question there automatically terminated an employee's <u>pre-existing contractual right</u>

26  to use the grievance procedure established by a collective bargaining agreement to

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 9
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1    pursue discrimination claims as soon as the employee opted to pursue the

2    discrimination claim outside the grievance process   In other words, an employee

3    who undertook what was clearly protected activity—complaining about

4    discrimination—subsequently suffered adverse action (the loss of a preexisting

5    contractual right)   In contrast to the Plaintiff in <u>Board of Governors</u>, Temple did not

6    lose any preexisting right by refusing to sign the Release   (Hutton Decl  at ¶ 19)

7    <u>Board of Governors</u> does not apply under the facts of this case   See <u>U S  v  New</u>

8    <u>York City Transit Auth</u>., 97 F 3d 672, 679 (2nd Cir  1996)

9         In its Motion for Summary Judgment, Allstate offered evidence establishing

10    its legitimate business reasons for implementing the Preparing for the Future

11    Program  (Hutton Decl  at ¶ 20-21, Allstate's Motion for Summary Judgment at 6-

12    7)  In his Motion, Temple offers no evidence to refute Allstate's explanation or to

13    even remotely suggest that Allstate implemented Preparing for the Future with any

14    consciousness of Steve Temple or for the purpose of retaliating against him or any

15    other agent who had asserted claims

16         Temple's so-called evidence that Allstate "needed to clean house to end its

17    war with its agents," evaporates upon close examination   For example

18    ▪    Temple claims that Allstate was "embroiled in litigation filed by its employees"
19         and cites Allstate's 1995 Annual Report as support for that proposition
         (Plaintiff's Motion at 27 )

20    ➢    In fact, the portion of the annual report cited by Plaintiff refers to proposed
21         settlement of class-action litigation solely involving California law, which
         plainly does not apply to Temple  (P Ex  38 at 2 )  That litigation was
22         resolved in January 1996, almost four years before Allstate announced
         Preparing for the Future  (P Ex  11 at 1)

23    ▪    Temple also cites to news articles describing conflicts between Allstate and
         some agents   (Plaintiff's Motion at 29.)
24
25    ➢    These articles were published in 1995, four years before Preparing for the
         Future was announced

26    ▪    Temple claims that Allstate's failure to withdraw the Preparing for the Future

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 10
291/322477 02
090902/1346/42496 00103

Ruddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1   Program following an EEOC decision in May 2000 somehow evidences
    retaliatory intent   (Plaintiff's Motion at 29 )

2

3   ➤ The EEOC's decision was made six months after Preparing for the Future
    was announced, and only one month before the Program was to be
    completed   (See Allstate's Motion for Summary Judgment at 4 )

4

5   ■ Temple claims that "his managers agreed no other employee agent made as
    many requests for accommodation, overtime, or raised other employee rights
    concerns," relying on excerpts from the depositions of Rollie Poulter and Stuart

6   Parsons   (Plaintiff's Motion at 30 )

7   ➤ The deposition testimony cited by Temple does not support his assertion
    Poulter testified only that he recalls talking with Parsons about Temple in

8   connection with budget matters   Parsons testified only that Temple tended to
    question every Allstate company policy, no matter what the subject   There is

9   no mention whatsoever of disability or overtime issues, or any other specific
    "employee rights "   (See Deposition of Rollie Poulter ("Poulter Dep ") at

10  79 12-19, Deposition of Stuart Parsons ("Parsons Dep.") at 95 7-21 )

11  ■ Temple claims that he "initiated a national investigation by the Department of
    Labor in 1999," which was widely discussed amongst management and Human

12  Resources   (Plaintiff's Motion at 30 )

13  ➤ The only support he provides is an excerpt of the deposition of Cindy Oster,
    an Allstate HR employee, who testified that she could not recall such an

14  investigation, though it was possible an investigation was going on
    (Deposition of Cindy Oster ("Oster Dep ") at 55 8 – 57 14 )

15

16  ■ Temple claims "it was undisputed that managers also discussed Steve Temple's
    multiple requests for overtime compensation," citing an excerpt from the
    deposition of Debbie Cooper   (Plaintiff's Motion at 30 )

17

18  ➤ In that passage, Cooper says only that at some point she became aware that
    Temple had requested overtime pay   (Deposition of Debbie Cooper
    ("Cooper Dep ") at 115 25 – 116 6 )

19

20  ■ Relying on inadmissible assertions by two fellow agents, Temple claims that his
    complaint to the Department of Labor was "the talk of the town" (citing the
    declaration of Steve Crosby) and that his "leadership and advocacy was a threat

21  to Allstate" (citing the declaration of Gail Carter)   (Plaintiff's Motion at 30-31 )

22  ➤ Crosby's statement is not based on personal knowledge and should be
    stricken   The Carter declaration only states that "it is logical to think that

23  Temple        presented a risk" that if Allstate had to give him permission to do
    things, it would also have to give other agents the same permission   (Carter

24  Decl  at ¶ 59 )

25  ■ Finally, Temple claims that Allstate launched a fraud investigation against him
    and "stalked him" because the company was threatened by his "leadership and

26  advocacy "   (Plaintiff's Motion at 31 )

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 11
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1
2
3
4
5

&gt; Although it is true that Allstate investigated a claim made by Temple's in-laws, the claims adjuster who asked for the investigation has offered unrebutted testimony that the request had nothing to do with Temple's employment   The adjuster testified that he had never heard of Temple before becoming involved in the in-laws' claim, that he knew nothing about Temple's protected activity, had never met or talked with Temple's managers, and that his reasons for requesting the investigation were based on the conduct of Temple's in-laws, not Temple himself   (Hutchinson Dep at 117 5 – 121 16 )

6   Plaintiff cannot establish any link between his own protected activity and

7   Allstate's decision to use the Release   Plaintiff argues that his managers looked

8   upon him with disfavor, and that this provided them with a motive to retaliate against

9   him for his protected activities   Even if this were true (and it is not), Allstate Vice

10   President Barry Hutton has confirmed that the decision to implement Preparing for

11   the Future, including the decision to use the Release, was made by managers at

12   Allstate's Home Office, and that Temple's managers in the Seattle region were not

13   involved   (Hutton Decl at ¶ 20 )

14   In summary, even if Plaintiff's many inflammatory accusations were accepted

15   as truth, he has failed to establish any connection between his activities and

16   Allstate's Preparing for the Future decision makers   As described in detail in

17   Allstate's Motion for Summary Judgment, Allstate had compelling business reasons

18   to terminate its employee agent programs, and its use of the Release was

19   consistent with standard practices of employers who offer enhanced post-

20   termination benefits   Allstate's Motion for Summary Judgment should be granted,

21   and Plaintiff's Motion denied for this additional reason

22
23   **IV.  ALLSTATE, NOT PLAINTIFF, IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISPARATE IMPACT CLAIM.**

24   **A.   Plaintiff's Disparate Impact Claim Is Conclusively Rebutted By Allstate's Undisputed Evidence.**

25   To present a prima facie case of disparate impact discrimination, Temple

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 12
291/322477 02
090902/1346/42496 00103

Ruddell Williams PS
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1  must demonstrate   (1) a specific employment practice that (2) causes a significant

2  discriminatory impact   Paige v  California, 2002 WL 1579101 at *2 (9th Cir  July 18,

3  2002)   As the court explained in Paige

4              In evaluating the impact of a particular process, we must
             compare the group that "enters" the process with the
5              group that emerges from it        The best evidence of
             discriminatory impact is proof that an employment
6              practice selects members of a protected class in a
             proportion smaller than in the actual pool of eligible
7              employees

8  Id  at *3   The Ninth Circuit's comments emphasize that analysis is used to

9  determine whether a selection process selects candidates from a protected group at

10  a different rate than from all other groups of individuals

11      Plaintiff claims he was a member of three protected classes   (1) employees

12  40 and older, (2) disabled employees and (3) employees who engaged in protected

13  activity   Assuming for purposes of this Opposition that Plaintiff's assertion is

14  correct,[5] Allstate has produced conclusive statistical evidence that the Program did

15  not discriminate against any of these protected groups   Under its Preparing for the

16  Future Program, Allstate terminated the employment of 100% of its employee

17  agents, including (1) 100% of the agents over and under 40, (2) 100% of the agents

18  with or without disabilities, and (3) 100% of the agents who did and did not engage

19  in protected activity   (Hutton Decl  in Support of Allstate's Motion For Summary

20  Judgment at ¶ 16 )  Likewise, it is undisputed that Allstate made the same

21  conditional offer of post-employment benefits to all of its agents   Plaintiff has no

22  evidence—statistical or otherwise—showing that the practice he is challenging

23  affected a higher percentage of age-protected or disabled agents than were in the

24

25  [5] Allstate rejects plaintiff's assertion that he was a qualified individual with a disability
   Further, and for reasons fully set forth in Allstate's Motion for Summary Judgment, there is
26  no support for plaintiff's assertion that "individuals who engaged in protected activity"
   constitutes a protected class  See Allstate's Motion for Summary Judgment at 15-17

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 13
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1   pool   Consequently, Plaintiff cannot prove disparate impact and Allstate, not

2   Plaintiff, is entitled to summary judgment on this claim.

3   **B.      Plaintiff has No Legal Support for his Novel Disparate Impact Theory.**

4          Plaintiff's claim is based on the premise that Allstate's use of the Release

5   had a disparate impact on Plaintiff's protected classes because these employees

6   had more potential employment discrimination claims than individuals outside those

7   classes   This argument has been expressly rejected by at least two federal courts

8   of appeal

9          In DiBiase v. SmithKline Beecham Corp., 48 F 3d 719 (3rd Cir 1995), the

10  employer implemented a reduction-in-force and offered all employees enhanced

11  severance benefits in exchange for a waiver   Id. at 722   The trial court ruled that

12  "older terminated workers have more accrued claims to give up than younger

13  workers   Thus, in order to comply with the ADEA, SmithKline should have given

14  extra consideration to older workers because by signing the release they were

15  giving up more claims than younger workers "  Id. at 727   The Third Circuit rejected

16  this reasoning outright

17              It is impossible to examine SmithKline's policy and conclude
                that on its face it treats older employees differently than
18              younger employees       the policy does not classify persons
                on the basis of age   On the contrary, the plan is an
19              archetypical example of a facially non-discriminatory policy
                SmithKline made the expanded package available to all
20              employees willing to sign the release, regardless of age.
                SmithKline did not require employees to waive only ADEA
21              claims, but to waive all claims

22  Id. at 727   See also Griffin v. Kraft General Foods, Inc., 62 F 3d 368, 374 (11th Cir

23  1995) (adopting the Third Circuit's disparate treatment analysis under similar

24  circumstances)   The court also concluded that, since SmithKline's use of the

25  release did not constitute disparate treatment, no claim should be viable under a

26  disparate impact theory, because such a claim would improperly be based on the

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 14
291/322477 02
090902/1346/42496 00103

Ruddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE  WA  98154-1065
(206) 624-3600

1    theory that SmithKline would have been required to engage in disparate treatment

2    in order to avoid disparate impact    Id  at 731-32

3        There is no basis in either law or equity for the proposition that an employer's

4    use of a waiver as a means to settle employment claims can be the basis for a

5    disparate impact claim [6]  Allstate's use of the Release involves circumstances that

6    are virtually identical to those considered in DiBiase   For the reasons articulated by

7    the Third Circuit and embraced by the Eleventh Circuit, Plaintiff's request for

8    summary judgment on his disparate impact claim should be denied.

9    ## V. ALLSTATE, NOT PLAINTIFF, IS ENTITLED TO SUMMARY JUDGMENT ON HIS DISABILITY CLAIM.

10

11        Temple's motion for summary judgment on his disability claim is likewise ill-

12    conceived   The undisputed facts (including Temple's own admissions) support

13    summary judgment in favor of Allstate, not Temple   (See Defendant's Motion for

14    Summary Judgment at 29-44 )  Setting aside all other issues, and assuming all

15    relevant facts in Plaintiff's favor, Plaintiff's Motion must be denied and judgment

16    entered for Allstate because complying with Agency Standards was an essential

17    function of an agent's job, and Temple admits that he could not comply with the

18    Standards   On this basis alone the Court can resolve Temple's disability claim and

19    need not consider Plaintiff's other contentions   However, Allstate, not Temple, is

20    entitled to summary judgment for additional reasons   (1)  Temple's condition is

21    undisputed except during the latter half of 1999 and did not qualify as a "disability"

22    or otherwise entitle him to protection of the disability laws; (2) Temple did not give

23    Allstate notice of his alleged disability and/or need for accommodation, and (3) even

24    ---

[6] Plaintiff's citation to Scheer v  Woodland School Community Consolidated Dist  No  50,

25    867 F 2d 974, 980 (7th Cir  1988) is improper, as that case concluded only that an employer's sick leave policy may have a disparate impact when it established different

26    eligibility criteria for individuals in the protected class (pregnant women)   There is no different eligibility criteria at issue here

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 15
291/322477 02
090902/1346/42496 00103

Ruddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1    if Temple had properly given notice of a need for accommodation, Allstate already

2    was providing one of the accommodations he now claims should have been made

3    and was not required to provide the other as a matter of law  Temple's arguments in

4    his motion for summary judgment do not create a genuine issue of material fact as

5    to these arguments and certainly do not establish that Temple is entitled to

6    summary judgment

7    **A.    Temple was Not a "Qualified Individual with a Disability" Because he**
     **Could Not Meet the Agency Standards.**

8

9    To establish a prima facie case of failure to accommodate under the ADA, a

10   plaintiff must prove that (1) he or she is disabled within the meaning of the ADA; (2)

11   he or she is qualified to perform the essential functions of the job, with or without

12   reasonable accommodation, and (3) the employer failed to accommodate the

13   disability  See Kennedy v  Applause, 90 F 3d 1477, 1481 (9th Cir  1996)  The test

14   under the WLAD is similar   Hill v  BCTI Income Fund, 144 Wn 2d 172, 193, 23 P 3d

15   440 (2001)  A "qualified individual with a disability" is a person who, with or without

16   reasonable accommodation, can perform the essential functions of [his or her] job

17   Weyer v  Twentieth Century Fox Film Corp , 198 F 3d 1104, 1108 (9th Cir  2000) [7]

18   Temple cannot establish that he was a "qualified individual with a disability" during

19   the time period at issue   If, as Temple claims, he could not meet the Agency

20   Standards because he needed to be out of the office for appointments and it was

21   impossible for him to find or afford licensed staff, then he could not perform the

22   essential functions of his job   (See Allstate's Motion for Summary Judgment at 42 )

23   Temple's sole argument in support of his claim that he was a qualified

24   individual with a disability is that meeting Agency Standards was not an essential

25

26   [7] Similarly, the WLAD only protects individuals with a disability where the disability does not
     "prevent the proper performance" of the employee's job   RCW 49 60 180

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 16
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

1    function of the agent's job   However, the evidence he presents does not create a

2    genuine issue of fact, much less entitled him to judgment as a matter of law   First he

3    offers evidence that he and a few other agents did not believe the Standards were

4    necessary   However, an employee's independent opinion about whether a task is

5    an essential function is not relevant to determining whether a function is essential

6    See 42 U S C  § 12111(8), 29 C F R  § 1630 2(n)(3).  By contrast, an employer's

7    judgment about the importance of the task is a relevant factor   29 C F R  §

8    1630 2(n)(i)  The Agency Standards were adopted because Allstate determined that

9    it needed to establish consistent countrywide standards to meet competitive

10   pressures and customer demands   (See Hutton Decl  at ¶¶ 21-22 )  Allstate

11   considered it critical that each of its agents meet these standards so that it could

12   both advertise and deliver the high level of service that its customers deserved and

13   market conditions demanded   (Id  at ¶ 23 )  The standards applied to all agents

14   (Id , Temple Dep  at 222 19 – 23, 223 13-17 )  Under applicable law, compliance

15   with the Standards was an essential function of the agent's job  (See Allstate's

16   Motion for Summary Judgment at 43-44 )

17          Temple also argues that that compliance with the Standards was not an

18   essential function because it was not mentioned in a written job description that was

19   prepared shortly after enactment of the ADA in 1992   (Deposition of Greg Lawrenz

20   ("Lawrenz 30(b)(6) Dep ") at 15 20 – 16 5 )  This argument is another red herring

21   There is no dispute that when the Standards were implemented, Temple and other

22   agents were informed in writing of Allstate's expectation that agents comply with

23   them  (See Cooper Dep  at Ex  7, Hutton Decl  ¶ 22 )  Although the 1992 job

24   description was not updated after the Standards were implemented, Allstate

25   communicated repeatedly to agents its expectations that they meet the Standards

26   as part of their job duties—indeed, one of Temple's complaints is that his managers

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 17
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1   repeatedly told him that he had to comply with the Standards   (Lawrenz 30(b)(6)

2   Dep  at 15 20 – 17 11 (agent job description included agency standards and other

3   requirements developed after the 1992 written description) )

4          Finally, Temple claims that compliance with the Standards was not essential

5   because Allstate sometimes made exceptions   This claim contradicts Temple's

6   deposition testimony, in which he admitted that Allstate enforced the Standards

7   uniformly and that he was not aware of any exceptions   (Temple Dep  at 222 19-23,

8   223 13-17 )  His so-called evidence supporting a contrary proposition is not what he

9   claims it to be   For example, the Morgensen declaration says the opposite of what

10  Temple claims, Morgensen states that until the Standards were implemented he

11  was able to come and go as he pleased   (See Morgensen Decl. ¶ 17 )  Similarly,

12  the Cooper testimony cited by Temple does not state that an exception to the

13  standards was possible as Temple claims   (Cooper Dep  at 128 6-20.)  In sum, the

14  evidence offered by Temple does not support his position, and he fails to cite any

15  relevant or supporting legal authority

16         Temple's assertions do not refute Allstate's evidence that compliance with

17  the Standards was an essential function of the agent's job   Because Temple admits

18  that he could not meet those Standards, he was not a "qualified individual with a

19  disability "  Accordingly, the Court should grant summary judgment in Allstate's

20  favor on Temple's disability claim and need not consider Plaintiff's other arguments

21  **B.     Temple's Condition Did Not Qualify For Protection Under Disability
        Laws During the Vast Majority of his Employment with Allstate.**

22

23         Even if the Court finds that meeting Agency Standards was not an essential

24  function of Temple's position, Allstate still is entitled to summary judgment on

25  Temple's disability claim   With the exception of a short period in the latter half of

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 18
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1   1999, the facts are undisputed as to Temple's condition. Even during the period
2   when the facts concerning his condition are disputed, Allstate--not Temple-- is
3   entitled to summary judgment for the reasons stated in Allstate's Motion for
4   Summary Judgment (and summarized above)

5       Because Temple's physical and mental condition varied during the time at
6   issue in this case, it is critical to review the record as it unfolded, rather than to blur
7   events and timeframes as Plaintiff has done

8   **1       Temple Was Not Disabled From November 1998 to April 1999.**

9       To establish the existence of a "disability" under the ADA, a plaintiff must
10  show that that he or she suffers from a recognized condition that "substantially limits
11  one or more .    major life activities " Toyota Motor Mfg , Kentucky, Inc v Williams,
12  534 U S  184, 122 S Ct  681, 686 (2002) (quoting the ADA, 42 U S C  §
13  12102(2)(A))   Under the WLAD, a plaintiff must show that  (1) he or she had a
14  sensory, mental or physical abnormality and (2) that abnormality had a substantially
15  limiting affect on the plaintiff's ability to do his or her job  Pulcino v Federal
16  Express, 141 Wn 2d 629, 641 (2000)  The facts are undisputed in Allstate's favor
17  with regard to Temple's condition during this period   From November 1998 to April
18  1999, Temple was able to work without any restrictions, and there is no evidence
19  that his cardiac condition substantially limited any other major life activities
20  According to Temple's own doctors, he was able to work without restriction in
21  November 1998  (P Ex  16, Temple Dep. at 300 13-25 )  In later visits during
22  November 1998 and January 1999, Temple's cardiologist did not place any
23  restrictions on his ability to work. (Deposition of Dr  John Petersen ("Petersen
24  Dep ") at 54 5-11, 56 15-25 )  Temple acknowledged in his deposition that he was
25  fully able to do his job when he returned to work after his heart attack.  (Temple

26

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 19
291/322477 02
090902/1346/42496 00103

Ruddell Williams PS
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1   Dep at 285 5-10 & 14-19 ) His application for disability benefits does not list the

2   onset of his disability as occurring until January 2000  (Temple Dep  at 464 4-15,

3   Ex  26 ) From this evidence, Allstate, not Temple, is entitled to summary judgment

4   on his claim relating to this period, because Temple was not substantially limited in

5   any major life activities, or in his ability to work

6           2      **Temple Was Not a Qualified Individual With a Disability After**
                   **January 2000.**
7

8           The facts also are undisputed <u>in Allstate's favor</u> with regard to the third

9   period of time at issue, because Temple was totally disabled beginning in January

10  2000  A totally disabled plaintiff cannot establish that he is a "qualified individual"

11  because there is no genuine issue of fact that he could have performed the job with

12  the proposed, or any other, accommodation   <u>Weyer</u>, 198 F 3d at 1108-09 (9th Cir

13  2000), <u>Kennedy</u>, 90 F 3d at 1481-82

14          Temple's admissions and the testimony of his treating physicians establish

15  that he was not able to perform his job, with or without accommodation, from

16  January 2000 through June 2000  Temple himself declared in a May 2000

17  application for disability benefits that he first became unable to work on January 12,

18  2000  (Temple Dep  at 464 4-15, Ex  26 ) He also admits that since that time, no

19  doctor has <u>ever</u> said that he was able to return to work, either with or without

20  accommodation   (<u>Id</u> at 467 16-19, 469 1-5 ) Testimony and records from Drs

21  Walker and Geren also confirm that Temple was totally disabled as of early 2000

22  (Deposition of Franklin Walker ("Walker Dep ") at 14 12-13, 16 11-16, 17 15-16,

23  50 13-51 19, 52 5-11, 81 13-15, Geren Dep  at 58 9-24, 67 20-25, Ex  9, 68 22 –

24  69 15 ) It is clear that Temple was not a "qualified individual with a disability" during

25  this time period, because he was not able to perform his job with or without

26  accommodation

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 20
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

3   **Whether Temple Was Disabled From May 1999 to December 1999 is, at Best, Disputed.**

   a   Whether Temple Was Disabled Under the WLAD During the Second Time Period is, at best, Disputed

The only period of time when there is any question about Temple's condition is the period from May – December 1999, when he was diagnosed with anxiety and depression but was able to continue working   Temple argues that he was "disabled" under Washington law because his condition substantially limited his ability to work, and working made his condition worse   At a minimum, there are genuine issues of material fact as to both of these arguments.

Temple contends that his depression and anxiety substantially limited his ability to work because he struggled to concentrate at work, found it difficult to transact business at the end of the day, sometimes nodded off at work, and sometimes cried in front of his customers   Even taken at face value, these allegations do not establish as a matter of law that Temple's condition had a "substantially limiting effect on [his] ability to perform his job "  In addition, the following evidence calls into question Temple's self-serving description of his condition

- Temple worked throughout this period without requesting or taking any time off for medical reasons other than to attend doctors' appointments, and Temple has no evidence that any health care provider recommended he miss work during this period   (See Exhibit 26 to Temple Dep (Application for Disability Insurance Benefits and related documents) )

- Temple's wages actually increased between 1998 and 1999, from $55,623 50 to $56,644 98, suggesting that he was more successful at work in 1999 than in 1998   (See W-2 Forms for Temple from Allstate, copies attached as Exhibit 4 to the Declaration of Karen Jones in Support of Allstate's Motion for Summary Judgment ("Jones Decl ") )

- Dr Geren saw Temple on May 26, 1999, the first visit since Temple's heart problem in September 1998   Following that visit, Dr Geren completed Allstate's disability form on June 9, 1999 indicating that

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 21
291/322477 02
090902/1346/42496 00103

Riddell Williams p s
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

Temple was not impaired    (Deposition of Dr  James Geren ("Geren
Dep ") at 17 9-11, 34 5-15, Ex  4 )

- Dr Petersen saw Temple on July 19, 1999 and reported that he was
  "very satisfied" with his cardiac status and did not plan to see him until the
  fall  Petersen did not see Temple again until May 26, 2000  (Petersen
  Dep at 62 10 – 63 2, 64 6-9, Ex  1 excerpt pp  1 and 3 )

- Temple did not see a mental health counselor until October 22, 1999  Dr
  Geren reported on September 1 that Temple "has not taken it upon
  himself" to schedule an appointment with a mental health counselor that
  Geren had recommended "way back in May "  (Geren Dep  at Ex  3
  excerpt page 51 )

- Dr. Geren saw Temple on November 12, 1999 and reported that "overall
  [Temple] feels he is doing better on Zoloft "  (Geren Dep  at Ex  3 excerpt
  page 47 )

- Temple was seen by a social worker on December 2, 1999, who
  observed that his blood pressure was lower, he was sleeping better, and
  "there seems to be slight improvement in his symptoms "  (See records of
  Regina Zupnick, attached as Ex  4 to the Declaration of Karen Jones in
  Opposition to Motion for Summary Judgment ("Second Jones Decl ") )

- Although Temple reported anger and frustration towards Allstate during
  this period, he did not tell any health care provider that he was having
  trouble doing his job until the end of December when he requested and
  received a leave of absence  (Geren Dep  at Exs  6, 7 )

Additionally, there are factual disputes with regard to Temple's argument that
his required medical treatments conflicted with his ability to be in the office  First, as
Temple acknowledges, Allstate's Agency Standards required only that licensed staff
be present during office hours, Temple himself did not have to be in the office
(Plaintiff's Motion at 3 )  Second, there are factual disputes about what medical
treatments Temple's doctors actually prescribed and whether the prescribed
treatment in fact interfered with Temple's ability to do his job  Although Plaintiff
makes various claims about the advice he allegedly received from Drs  Geren and
Petersen, the doctors were not nearly as specific as Temple would have the Court

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 22
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1 | believe When Dr Geren first saw Temple on September 30, 1998, he did not
2 | discuss specific steps that Temple needed to take for recovering from his heart
3 | attack, and he did not even see Temple again until late May 1999 (Geren Dep at
4 | 12 17-19, 17 9-11, 20 15-23 ) After the May 1999 visit, Dr Geren advised Allstate
5 | that Temple was not impaired, and indicated only that he needed to participate in a
6 | cardiac rehabilitation program and stress reduction classes "during the work week "
7 | (Geren Dep at Ex 4 ) In his deposition, Dr. Petersen could not remember whether
8 | he told Temple in early November 1998 that he could only work certain hours or that
9 | he needed to leave the office (Petersen Dep at 30 7 – 31 4 )[8] With respect to the
10 | structured cardiac rehabilitation program, Dr Petersen could not recall whether he
11 | recommended a particular program to Temple (Id at 36 1-9 ) Temple has
12 | presented no evidence that anyone ever informed Allstate that Temple needed to
13 | attend a specific rehabilitation program that offered classes only during the day

14 | Finally, there is a factual dispute with regard to Temple's allegation that
15 | working worsened his condition In support of this contention, Temple relies
16 | primarily on the report of Dr Andrea Jacobson, the expert Temple retained to testify
17 | on his behalf in this lawsuit Notably, Dr Jacobson did not even see Temple until
18 | June 10, 2002, more than 17 months after the timeframe in question and after
19 | Temple had filed suit To the extent Dr Jacobson offered any opinion regarding
20 | Temple's condition in the latter half of 1999, she relied on reports of other health
21 | care providers, none of whom recommended at the time that Temple miss work or
22 | indicated that work was causing his condition to worsen Moreover, Dr Jacobson's
23 | report itself raises a number of factual disputes about whether it was work or

24 |

---

25 | [8] Temple quotes this same passage as support for the claim that his doctors "expected him
to attend regular doctor's appointments, mental health therapy, and take time away from
26 | the office to reduce stress and anxiety " (Plaintiff's Motion at 8 ) That assertion is a gross
mischaracterization of Dr Petersen's testimony

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB - Page 23
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

1  something else that caused the alleged worsening of Temple's condition

2  Specifically, Dr Jacobson identifies a number of stressors that "might have

3  contributed to [Temple's] marked decline," including his heart attack in September

4  1998, stress from having his wife's family move in with his family during July 1999,

5  his mother's failing health, dealing with repeated sexual assaults that he

6  experienced years earlier, and other medical problems  (See P Ex 15 at 14-15 )  In

7  addition, Allstate's expert disputes Temple's claim on this point and questions Dr

8  Jacobson's assessment of the cause of Temple's condition  (See Report of Dr

9  Gerald Rosen, attached as Exhibit 5 to the Second Jones Decl )

10  There is also significant evidence in the record that Temple's own habits and

11  decisions caused or contributed to his declining health  When Dr Petersen saw

12  Temple on January 29, 1999, he was not engaged in as much exercise as Petersen

13  would have liked  (Petersen Dep 56 3-10 )  Months later, when Dr Geren saw

14  Temple on May 26, 1999, Temple apparently was still not getting the exercise

15  Geren believed was important  (Geren Dep at 32 1-7 )  Temple has offered only

16  vague descriptions of any attempt he made to get the physical exercise his doctors

17  felt he should have  Temple claims he was walking two miles two or three times

18  each week, but cannot remember when that was  (Temple Dep at 278 9-21 )

19  Temple also claims he visited a health club after work, but could not recall even

20  approximately how many times a week he went  (Id at 316 7–317:5 )  Even after

21  he left Allstate and presumably had more free time, Temple has never enrolled or

22  participated in a cardiac rehabilitation program  (Id at 454 7-25 )

23          b      Whether Temple Was Disabled Under the ADA During the
                   Second Time Period is, at Best, Disputed

24

25  There also are factual disputes as to whether Temple was disabled under the

26  ADA during the latter half of 1999  As described above, Temple's evidence that he

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 24
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE  WA  98154-1065
(206) 624-3600

1  was substantially limited in his ability to work clearly is disputed

2      Temple's related argument that his condition created a "substantial limitation

3  on the major life activity of working" is likewise flawed   Temple argues that he was

4  substantially limited in his ability to work because he had entered into a non-

5  compete agreement with Allstate that prevented him from seeking employment

6  elsewhere [9]  This argument lacks merit for three reasons   First, the conclusion that

7  Temple could only hold "entry-level positions" because he was bound by a non-

8  compete is a massive logical leap and ignores any number of potential jobs

9  available to Temple, such as those he previously held   (See Temple Dep  at 27 24

10  – 28 5 (previous job selling cars) )   Second, even if the non-compete clause limited

11  Temple's ability to work in certain jobs, that limitation does not support an argument

12  that Temple's condition substantially limited him in the major life activity of working,

13  because the non-compete, and not Temple's condition, created the limitation

14  Third, any limitation imposed by the non-compete was not "substantial "  The non-

15  compete clause contained only a limited restriction on Temple's solicitation of

16  Allstate customers for a period of just one year  (See P.Ex  5 at ¶ 13 )

17  **C.    Temple Did Not Give Allstate Adequate Notice of His Alleged Need for**
**Accommodation.**

18

19      As described above, Allstate is entitled to summary judgment because

20  Temple cannot show that he was a qualified individual with a disability who needed

21  an accommodation   Therefore, the Court need not reach the issue of whether

22  Temple provided adequate notice of his alleged need for accommodation to

23  Allstate   However, should the Court determine that there is a fact issue as to

24

---

25  [9] Although Plaintiff now contends that he was forced to remain in his job because of the
non-compete provision and that he constantly asked Allstate for various accommodations,

26  Plaintiff never requested an adjustment to his non-compete agreement as an
accommodation   See Declarations of Steve Temple and Lisa Temple

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 25
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

1   whether Temple was a "qualified individual with a disability" during the latter half of

2   1999, Allstate still is entitled to summary judgment because Temple did not provide

3   adequate notice of his alleged need for accommodation   (See Allstate's Motion for

4   Summary Judgment at 38-40 )  Neither Temple nor his doctors informed Allstate

5   that his condition limited his ability to work, or that he needed a specific

6   accommodation

7   Temple now tries to claim that Allstate "absolutely" had notice of his

8   condition   However, the "evidence" he presents does not even establish a fact

9   issue precluding summary judgment in Allstate's favor   Although Temple boldly

10  claims that he made "myriad verbal requests for accommodation" to his managers,

11  in fact, none of the managers recalls any discussion where Temple informed them

12  that he needed the accommodations in question due to a disability or medical

13  condition   While Allstate concedes that it had notice of Temple's heart condition

14  and the information provided in the letters from his physicians, there is ample

15  evidence to refute his claim that Allstate knew that he needed the two

16  accommodations that Temple now claims it should have made to accommodate his

17  medical condition

18  Temple first claims that he notified Allstate that he needed an exemption

19  from Agency Standards to take time off during the day so that he could attend

20  doctor's appointments and a particular cardiac rehabilitation program   The

21  evidence on this is in dispute

22      ■   Temple admits that he cannot recall having ever missed a doctor's
       appointment because of the Standards  (Temple Dep  at 355 4-13 )

23

24      ■   When Temple wrote Greg Lawrenz in April 1999, he indicated his
       belief that he needed an hour off during the day, but he could not
       recall in his deposition whether that was based on any medical advice

25          (Temple Dep  335 13-22 )

26      ■   Temple's doctors never informed Allstate that Temple needed time off

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE  WA  98154-1065
(206) 624-3600

1
2
3
4
5
6
7

> from work during the day for any reason  Dr. Petersen's November 5, 1998 letter said nothing about cardiac rehabilitation, and cleared Temple for "full occupational responsibilities and duties starting November 2, 1998 "  (Petersen Dep  at Ex  4 )  The form Dr  Geren completed for Allstate in June 1999 mentioned that Temple should be "allowed to participate during the work week in an exercise rehab program and stress reduction classes," but it did not say anything about a specific program or time of day   (Geren Dep  at Ex  4 )

> ▪   Temple has failed to produce any evidence indicating that anyone ever informed Allstate of his alleged need to participate in a particular program that was available only during the workday

8   Several facts also contradict Temple's claim that he notified Allstate that he

9   needed to combine offices with another agent to accommodate his medical

10   condition  As described above, Temple's primary evidence on this point is his

11   allegation that he and his wife repeatedly requested this accommodation   In

12   contrast, Temple's managers repeatedly testified that they did not recall Temple

13   ever communicating that he needed an accommodation because of a disability

14   (See Deposition of Rob Fowler ("Fowler Dep ") at 70 17 - 71 12, Deposition of

15   Penny Watson ("Watson Dep ") at 21 22-25, [10] Parsons Dep  at 56 22 - 61 8 )  In

16   addition, there is substantial evidence that Temple did not indicate he was seeking

17   an accommodation when he expressed interest in combining offices with another

18   agent  Temple claims he asked Rollie Poulter (his manager at the time) to combine

19   offices with Helen Elwood so that he could go on daily walks, attend doctor's

20   appointments, and attend the cardiac rehabilitation program   (Temple Decl  ¶ 40 )

21   However, Poulter does not recall Temple telling him that sharing his office would

22   allow Temple to take daily walks and go to his doctor's appointments - or that daily

23   walks were medically necessary - and in fact does not recall Temple's reasons for

24   requesting to combine offices at all   (Poulter Dep  at 63 14-22, 64 7-18, 68 5-8 )

25
26

---

[10] Penny Watson recently married and is now Penny Jensen  For purposes of clarity, this brief will refer to her deposition as the "Watson Dep.," although the deposition transcript refers to Penny Jensen

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 27
291/322477 02
090902/1346/42496 00103

Riddell Williams p s
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1    *Poulter's testimony on this point contradicts Temple's story*

2    Q.    [D]id Steve Temple tell you that the reason that he
            wanted to combine offices with Barry Koehler was so
3            that he could take daily walks?

4    A    No

5    Q.    *Did he tell you that the reason that he wanted to*
            *combine offices with Barry Koehler was so he could go*
6            *to doctors' appointments?*

7    A    No

8    Q.    Did there ever come a time that you learned that the
            reason why Mr Temple wanted to combine offices with
9            Mr Koehler was to take walks?

10    A    No

11    Q.    You never heard anything about taking walks?

12    A    No

13    Q.    And did you learn at any point the reason that he wanted
            to combine offices was to attend doctors' appointments?
14
      A    No
15

16    (Id at 70 19 – 71 12 )

17    Other managers testified in similar fashion   For example, although Temple

18    identifies Parsons as someone from whom both he and his wife specifically asked

19    for an accommodation (Temple Decl ¶¶ 33-36), Parsons has no recollection of any

20    such conversation   (Parsons Dep at 60:17 – 62 17 )  In addition, Penny Watson

21    was aware that Temple was trying to combine offices with another agent at some

22    point, but did not recall how she learned that and gave no indication that Temple's

23    efforts were based on a need for accommodation   (Watson Dep at 177 1-10 )

24    Greg Lawrenz stated that he did not know that Temple's reason for asking to

25    combine offices was for accommodation.  (Lawrenz 30(b)(6) Dep at 235 7-11,

26    242 4 )

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB - Page 28
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

**D.    Allstate Responded to Temple's Request for Accommodation Appropriately.**

Temple did not give Allstate notice of his alleged disability or need for accommodation until June 1999, and when Allstate received that notice, the company promptly responded  (See Allstate's Motion for Summary Judgment at 40-42 )  Despite these undisputed facts, Temple claims that Allstate failed to respond appropriately to his alleged request for accommodation as a matter of law because it failed to (1) engage in the "interactive process," and (2) provide him with the accommodations he allegedly requested  Even if Temple were able to establish that he had a disability and that he gave Allstate notice of his need for accommodation, there are genuine issues of material fact on this element of his claim

**1    There is Ample Evidence That Allstate Engaged in the Interactive Process With Temple.**

There is substantial evidence that Allstate engaged in an "interactive process" with Temple once he actually requested an accommodation  The one time that Temple clearly indicated to Allstate that he needed an accommodation of his condition was in his April 13, 1999 letter to Greg Lawrenz. Debbie Cooper, an Allstate Human Resources Division Manager, reviewed the letter and prepared a response  (Cooper Dep at 118 8-22, Ex 2 )  In her review, Cooper could not tell from Temple's letter what specific impairment Temple claimed to have that would affect his job  (Id at 114 3-12 )  Temple's letter attached a letter from Dr Petersen dated March 31, 1999, which informed Allstate that Temple had a cardiac condition, but the letter also stated that he had "stabilized from a medical perspective "  (Id at Ex 1 )

Upon receipt of these letters, Cooper requested additional information from Temple and sent him an information form, which Temple asked Dr Geren to complete  (Cooper Dep at 118·8-22, Ex 2.) After receiving that form in June 1999,

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 29
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1    Allstate wrote Temple a letter informing him that based on the information Dr Geren
2    provided, Temple was not a qualified individual with a disability  (Id  at 143 22-25,
3    Ex  5 )  Allstate also informed Temple that even if he were disabled, he did not
4    require any adjustment to his work schedule to participate in an exercise or stress
5    reduction program, as Dr Geren recommended  (Id )  In light of all this evidence,
6    Temple's contention that "Defendant concedes that it did nothing to accommodate
7    Mr Temple's disabilities" is patently false.

8        Once Allstate informed Temple that the information available indicated that
9    Temple was not disabled or in need of accommodation, it was up to Temple to
10   provide additional information if he or his physicians disputed Allstate's
11   understanding of the information provided by Dr Geren  Allstate evaluated the
12   information Temple and his doctors provided and concluded that Temple did not
13   have a disability that required accommodation  Allstate then informed Temple of its
14   conclusion, and Temple never provided any additional information [11]  On this record,
15   Allstate fulfilled its duty to engage in an interactive process  See Loulseged v Akzo
16   Nobel Inc , 178 F 3d 731, 735-36 (5th Cir 1999) (employer does not violate ADA
17   where employee forestalls the interactive process), Beck v University of Wisconsin
18   Bd of Regents, 75 F 3d 1130, 1137 (7th Cir 1996) (same)  At the very least,
19   whether Allstate met its responsibilities is an issue for the jury  See e g , EEOC v
20   Yellow Freight System, Inc , 253 F 3d 943, 958-59 (7th Cir 2001)

21       The record does not support Temple's claim that Allstate ignored his verbal
22   requests  As described above, while Temple may have spoken with his managers
23   about combining offices with other agents, he did not tell them that he believed he

24

25   [11] The only allegation regarding a response to Cooper's letter is the assertion in Temple's
     declaration that he wrote to Cooper on August 23, 1999, again requesting an
26   accommodation  That letter only requested that Cooper write to him on Allstate letterhead
     See Exhibit 9 to the Jones Decl

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB - Page 30
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

1    needed to combine offices as an accommodation of his condition  (See Section

2    V C, above )  In addition, when Temple made a request for accommodation, Allstate

3    *responded appropriately, asking for additional information from Dr Petersen*

4    evaluating Temple's request, and providing him with a response  (See Section

5    V D 1, above )  Finally, Temple's claim that Allstate "stonewalled and ignored Dr

6    Petersen when he invited Allstate to contact him" is a mischaracterization of the

7    record  Heather Frasier, an Allstate Human Resources employee, wrote to Dr

8    Petersen regarding Temple's cardiac condition and specifically sought his feedback

9    regarding Temple's limitations, if any  (See Frasier Dep  at 62 17 – 68 17 )

10   Temple's allegation that Allstate "ignored his verbal requests" is meritless, and, at a

11   minimum, is highly disputed

12       2       **Allstate Provided One of the Accommodations Requested by**
                 **Plaintiff And Was Not Required to Provide the Other.**
13

14       Temple claims that Allstate failed to provide him with the accommodations he

15   allegedly requested and that this failure was a violation of the ADA and the WLAD

16   as a matter of law   This claim is flawed because, even if Temple had a disability

17   and had properly notified Allstate of his requests for accommodation, Allstate

18   provided Temple with one of the accommodations at issue and was not required to

19   provide him with the other as a matter of law  (See Allstate's Motion for Summary

20   Judgment at 40-42 )  For this additional reason, Allstate, not Temple, is entitled to

21   summary judgment on his disability claim

22       The first accommodation Temple contends Allstate should have made is

23   allowing him to close his office, so that he could attend a specific cardiac

24   rehabilitation program as well as his doctor's appointments and reduce stress  This

25   accommodation already was being provided to Temple, because he could leave his

26   office at any time as long as licensed staff was present  Even if the accommodation

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 31
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1    were not already available to Temple, there are factual disputes on at least two

2    aspects of this claim  (1) whether Temple actually needed time off during the day,

3    and (2) whether Temple could not find or afford licensed staff to cover his office

4    Although Temple claims that the Agency Standards prevented him from

5    leaving his office for medical appointments, in his deposition, Temple could not

6    recall a single instance where he missed a doctor's appointment in order to ensure

7    compliance with the standards  (Temple Dep at 355 4-13 )  Further, as explained

8    above, the record is unclear about whether Temple's doctors ever recommended to

9    Temple or anyone else that Temple needed to enroll in a specific cardiac

10   rehabilitation program  None of the doctor's notes indicate that Temple needed to

11   attend a specific program  (See P Exs 16 and 18 (at p 2), Geren Dep at Ex 4 )

12   Additionally, Dr Petersen admitted that Temple did not need to enroll in a specific

13   program to get the exercise he needed  Dr Petersen testified that there is no

14   difference in the long run between participating in a structured rehabilitation

15   program and exercising regularly on his or her own, according to scientific studies

16   (Petersen Dep at 73 14-21, 76 12 – 77 8 )

17   The facts regarding Temple's ability to hire licensed staff to cover for him

18   also are disputed

19   •   Although Lisa Temple worked in the office for years on a part-time basis,
20       she did not want to try to become licensed. (Temple Dep at 201 1-11,
         Lisa Temple Dep at 156 6-25 )

21   •   The only thing Temple did to try and hire licensed staff was call temporary
22       firms  (Temple Dep at 195 15 – 196 20 )

23   •   Temple did not advertise for licensed staff  (See Temple Dep at 195 15
         – 204 21 )

24   •   Steve Crosby, another agent on the peninsula, helped his unlicensed staff
25       become licensed and paid her $7 an hour plus commission  (Crosby
         Dep at 16 1 – 17 6, 22 14-23 )

26   •   Temple admits that he did not know or ask about the procedures for

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No C01-5124RJB - Page 32
291/322477 02
090902/1346/42496 00103

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600

1    getting someone licensed   (Temple Dep at 198 8-20, 202 25 – 203 5 )

2    ■  Temple claims that he spoke to someone about the possibility of hiring
        them, but could not remember who or whether he spoke with more than
3        one person   (Temple Dep at 199 12-24 )

4    ■  Temple also did not pursue the possibility of having the daughter of agent
        Helen Elwood help him out as a licensed staff person   (Id at 162 16-19 )
5
     ■  Temple's former manager testified that she could not understand why
6        Temple claimed to have trouble finding support staff on the Olympic
         Peninsula because "[o]ther agents in the district had licensed support
7        staff " (Watson Dep at 83 9-15, 84 9 – 88 2 )

8        The facts also are disputed on the issue of whether Temple could afford to

9    hire licensed staff   Temple claims that he was unable to afford the cost of having

10   someone cover for him   However, he also states in his declaration that he could

11   have afforded to pay licensed staff 15 hours a month without even making any

12   adjustments to his salary or Office Expense Allowance (OEA)   (Temple Decl ¶ 21 )

13   Temple's declaration also states that he could not afford licensed staff because he

14   had $264 per month for staff and advertising beyond the Yellow Pages, but had he

15   hired support staff in a similar arrangement to agent Steve Crosby's (with pay of $7

16   an hour plus commission), it would only cost $182 to have someone in the office for

17   26 hours a month   Temple also admits that he easily could have increased the

18   amount of money available to hire staff (his OEA) by reducing his own income   (Id )

19   This could have been a reasonable solution, as Temple himself says that he was a

20   successful insurance agent and "made a good living " (Temple Decl ¶ 13 ) There

21   are numerous genuine issues of material fact on Temple's claim that Allstate should

22   have allowed him to close his office for appointments

23       The second accommodation Temple claims Allstate should have made is

24   forcing other agents to combine offices with him so that another agent would be

25   available in the office when he left   Even if Temple had notified Allstate that he

26   wanted to combine offices as an accommodation for his condition (which he did not

Ruddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE WA 98154-1065
(206) 624-3600

1    do), there is a factual dispute as to whether the agents wanted to combine offices

2    with Temple [12]  Although Temple provides declarations from agents Elwood,

3    *Koehler and Bondy claiming that Allstate managers discouraged them from joining*

4    offices with Temple, conflicting declarations from agent Elwood and manager Rollie

5    Poulter indicate that two of the agents named by Temple (Elwood and Bondy) did

6    not want to combine offices with him  (See Declarations of Helen Elwood and Rollie

7    Poulter in Support of Allstate's Motion for Summary Judgment at ¶¶ 3 and 5,

8    respectively )  Temple admitted in his deposition that his plans to combine offices

9    with Koehler fell apart because of location  (Temple Dep  at 46 3-8, 48 18-49 1,

10    83 12 – 86 10 )  The facts on this point are disputed

11            3    **Allstate Handled Temple's Later Requests for Accommodation**
                   **Properly.**

12

13            Temple also makes the meritless claim that Allstate should have made two

14    accommodations after he became totally disabled  First, Temple claims that

15    Allstate should have forced other agents to combine offices when his wife requested

16    that in May 2000  However, it is undisputed that Temple was totally disabled at that

17    point and could not have worked even with an accommodation  (See Section V B 3

18    above )  Second, Temple contends that Allstate should have given him an extension

19    on the June 1, 2000 deadline by which all agents had to decide whether to convert

20    to independent contractor status  But it is undisputed that Temple was notified of

21    Allstate's plans to end its employee agency program and was advised of his options

22    in mid-November 1999 – two months before he went on disability leave  (See P Ex

23    1, Temple Decl  at ¶ 115 )  Like all agents, Temple had more than seven months to

24    decide whether to convert  Allstate was not required to grant his request for an

25    _____

26    [12] If the agents did not want to combine offices with Temple, Allstate was not required to
     force them to do so  See Allstate's Motion for Summary Judgment at 42

Riddell Williams P S
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600

1   indefinite extension  See Walsh v  United Parcel Service, 201 F 3d 718 (6th Cir

2   1000) (indefinite leave for employee to obtain information about his disability and

3   recuperation period was not a "reasonable accommodation"), Duckett v  Dunlop Tire

4   Co , 120 F 3d 1222 (11th Cir  1997) (indefinite leave is not a reasonable

5   accommodation)

## VI. **CONCLUSION**

7   For all of the foregoing reasons, Allstate Insurance Company respectfully

8   asks the Court to deny Plaintiff's Motion for Partial Summary Judgment

9   DATED this 9th day of September, 2002

10                                      RIDDELL WILLIAMS P S

12   By _____
                  Karen F  Jones, WSBA #14987
13                Laurence A  Shapero, WSBA #31301
                  Of Attorneys for Defendant Allstate
14                Insurance Company

DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - Case No  C01-5124RJB - Page 35
291/322477 02
090902/1346/42496 00103

Riddell Williams p s
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA  98154-1065
(206) 624-3600